UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-2720(DSD/SRN)


Christofar Atak,

            Plaintiff,

v.                                                    **ORDER**

Gregory Siem, in his individual
capacity and as an officer of
the Rochester Police Department,
John Doe and Richard Roe, in
their supervisory capacities as
ranking Rochester police officers,
and the City of Rochester,

            Defendants.


        Robert Bennett, Esq., Eric Hageman, Esq., Andrew Noel,
        Esq. and Flynn, Gaskins & Bennett, Suite 2900, 333 South
        Seventh Street, Minneapolis, MN 55402, counsel for
        plaintiff.

        Jon K. Iverson, Esq., Jason J. Kuboushek, Esq. and
        Iverson Reuvers, 9321 Ensign Avenue South, Minneapolis,
        MN 55438, counsel for defendants.


        This matter is before the court upon defendants' motion for
summary judgment.  For the following reasons, defendants' motion is
granted in part and denied in part.


                              **BACKGROUND**

        At approximately 8:50 p.m. on September 2, 2002, Officer
Douglas Remling of the Rochester Police Department received and
responded to a dispatch regarding an intoxicated person damaging
property.  (See Remling Dep. at 13-14.)  Plaintiff Christofar Atak

was the subject of the call.  Defendant Officer Gregory Siem also received the call and volunteered to back up Remling.[1]  As Remling arrived at the scene, he saw Atak in the middle of the street. Remling stopped his car and approached Atak.  After interacting with Atak, he determined that Atak should be taken into custody for safety reasons.  Remling had difficulty restraining Atak, and Siem arrived shortly thereafter.  Before exiting his vehicle, Siem grabbed his M26 Advanced Taser ("Taser").  He alleges that he approached Remling and Atak with the Taser in his right hand[2] and placed it either on Remling's squad car or put it in his cargo pants pocket.  (See Siem Dep. at 30, 36.)

After unsuccessfully attempting to assist Remling in handcuffing Atak, Siem decided that it was necessary to use additional force.  Siem drew his Glock Model 22 .40 Caliber SW ("Glock") firearm and fired one bullet into Atak's back when Atak was less than one foot away and slightly bent over.  Siem alleges that he mistook his Glock for his Taser.

Plaintiff filed this suit on May 19, 2004, claiming that defendants deprived him of his right to be free from the use of excessive and unreasonable force pursuant to the Fourth Amendment of the Constitution of the United States.  He asserts that

---

[1]  Both officers were employed by defendant City of Rochester.

[2]  Atak claims that he saw Siem exit the squad car with a gun in his hand, which Siem denies.  (See Atak Dep. at 67-68; Siem Dep. at 29.)  Remling did not see Siem get out of the car.

defendants violated his rights under color of state law and pursuant to established policies and customs in violation of 42 U.S.C. § 1983.[3] (Compl. ¶¶ 11-16, 23-35.) Defendants now move for summary judgment on all claims.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

---

[3] Plaintiff has agreed to dismiss his civil rights claims against the unnamed defendants and his negligence claims against defendants Siem and City of Rochester. (See Compl. Counts II, IV & V.)

cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255.  The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.  Judgment may be rendered with respect to all or any part of a particular claim.  See Fed. R. Civ. P. 56(b).

## II.  Qualified Immunity

Defendants move for summary judgment on grounds of qualified immunity.  Qualified immunity provides protection from civil liability to government agents performing discretionary functions, so long as the challenged actions are objectively reasonable in light of clearly established legal principles.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Qualified immunity is generally a question of law for the court and, because its purpose is to shield the official from suit entirely, it should be decided

4

as early in the litigation as possible.  See Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992) (rehearing and rehearing en banc denied).

To establish a Fourth Amendment violation in a section 1983 action, a claimant must show that a seizure occurred and that the seizure was unreasonable.  McCoy v. City of Monticello, 342 F.3d 842, 846 (8th Cir. 2003).  A seizure occurs when an officer restrains an individual's liberty through physical force or show of authority.  Id. at 846.  However, not every government act that results in restraint of an individual's liberty qualifies as a seizure.  Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989). Rather, the official must restrain an individual's "freedom of movement *through means intentionally applied*" to give rise to an actionable claim.  Id. at 597 (emphasis in original).  In other words, the Fourth Amendment does not apply to "the accidental effects of otherwise lawful government conduct."  Id. at 596 (decedent was "seized" by crashing into police roadblock because it was "the very instrumentality set in motion or put in place in order to [stop the decedent]"); see also County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (continued police car pursuit with flashing lights did not "seize" motorcyclist by accidently crashing into him).

Plaintiff asserts that defendant Siem violated his Fourth Amendment rights by intentionally using a gun to restrain him.

5

Defendants allege, however, that Siem intended to use a Taser, not a gun. Therefore, the question before the court is whether Siem's shooting of Atak was the means intentionally applied to effect the seizure.[4]

As evidence of Siem's intent, plaintiff points to the physical and operational differences between a Taser and a Glock. At oral argument, plaintiff offered Taser and Glock exemplars for the court to compare.[5] The court notes that the two weapons have similar appearances. However, the Glock is significantly heavier and has a noticeably different feel when held. Plaintiff also emphasizes the different steps necessary to discharge the two weapons.[6] Siem had to disengage two mechanisms on his security holster to draw the Glock. First, he had to break the thumb release on the upper

---

[4] The court notes that a Fourth Amendment excessive use of force claim is usually analyzed under the reasonableness prong, not under the seizure prong. However, the court must first determine whether the force applied to effect the seizure was intentional before the court can analyze whether such force was excessive. See, e.g., Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1105 (8th Cir. 2004) (indicating only intentional force is considered in excessive use of force claim); McCoy, 342 F.3d at 847-48 (analyzing reasonableness of seizure without considering unintentional shooting).

[5] Defendants objected to plaintiff's reliance on the affidavit of Mark Koscielski in responding to defendants' motion for summary judgment. (See Defs.' Mem. Supp. Summ. J. at 8-9.) For purposes of the instant motion, the court has not considered the affidavit of Koscielski.

[6] The court stated during oral arguments that defendants should voice any objections to plaintiff's description of weapon safeties and mechanisms. Defendants have not disputed plaintiff's descriptions.

6

inside of the holster.  Second, he had to rock the gun forward to
defeat a trigger guard and draw the gun.  After the gun was drawn,
Siem had to release the trigger safety and pull the trigger to fire
a bullet at plaintiff.  By contrast, the Taser has no security
mechanisms to prevent access.  Rather, it has an external manual
safety mechanism that requires manipulation by the thumb to engage
the laser and arm the weapon.  The Taser also has a red laser sight
that automatically appears when the safety is released.  Instead of
having a conventional trigger like the Glock, the Taser has a
rubber button.

Plaintiff also points to Siem's statements following the
shooting as evidence of his intent to shoot plaintiff.  Immediately
after plaintiff was shot, Siem said to Remling, "I think I shot
him." (Remling Dep. at 48.)  Defendants argue that this statement
indicates that Siem did not know if he shot plaintiff and therefore
did not intend to.  However, the statement is also consistent with
plaintiff's theory that Siem panicked and intentionally drew his
gun from his holster, only realizing afterwards the full
consequences of his decision.  Siem did not offer any explanation
for the shooting to Remling at the scene or to Rochester Police
Lieutenant Pat Donnelly and Sergeant S.T. McCarron when he spoke
briefly with them after the shooting.  (See Bennett Aff. Exs. 7-8.)
Later, at the Law Enforcement Center, Siem told Remling, "I'm
sorry." (Remling Dep. at 80.)  Hours after the incident, Siem told

7

Remling that he was "trying for a body shot with the Taser and grabbed [his] Glock by mistake." (Id. at 81.)   Plaintiff alleges that was the first time Siem mentioned a mistake to anyone. Plaintiff argues that Siem's statements and delayed explanation suggest that he fabricated the mistake.   The court finds that plaintiff has presented sufficient evidence to establish an issue of fact concerning whether Siem intentionally used his gun when he seized plaintiff.

Defendants raise numerous arguments against plaintiff's showing of intent.   First, they argue that the physical and operational differences between the weapons are irrelevant to the issue of intent.   The court disagrees.   The differences between the weapons are relevant to whether Siem could have actually mistaken his Glock for a Taser.   Moreover, defendants' reliance upon a recent decision in the Eastern District of California is misplaced. In Torres v. City of Madera, the district court held that operational differences did not raise an issue of fact on whether an officer intended to draw her taser instead of her gun.   Case No. 02-6385, at 13 (E.D. Cal. April 8, 2005) (unpublished).   (See Kuboushek Aff. Ex. D at 14.)   However, the court explicitly noted that plaintiffs did not dispute the fact that the officer actually mistook her gun for a taser.   See id. at 13.   Rather, they argued that the intentional acts associated with firing a gun sufficed to establish intent for Fourth Amendment purposes.   See id. at 9, 13.

8

By contrast, here plaintiff alleges that Siem did not mistake his Glock for his Taser.  Therefore, the reasoning in <u>Torres</u> does not apply.

Second, defendants argue that existing caselaw requires the court to find that Siem did not intend to shoot plaintiff. However, the cases cited by defendants are inapplicable because they involved undisputed accidental acts of force with no evidence of intent.  <u>See, e.g.</u>, <u>Bublitz v. Cottey</u>, 327 F.3d 485, 489 (7th Cir. 2003) (collision between fleeing suspect's car and plaintiff's car was undisputed "wholly unintended consequence"); <u>Campbell v. White</u>, 916 F.2d 421, 423 (7th Cir. 1990) ("[T]here is no evidence whatsoever ... that [defendant] intended to stop or detain [plaintiff] by running over him with his car ...."). By contrast, plaintiff here has presented evidence that Siem intended to employ deadly force when seizing him.  Therefore, the cases cited by defendants are unpersuasive.

Third, defendants argue that the undisputed facts show that Siem did not intend to shoot plaintiff. (<u>See</u> Defs.' Reply Supp. Summ. J. at 7-8.) Defendants point to Siem's testimony, quoted by plaintiff, that he did not believe the use of deadly force against plaintiff was necessary. However, Siem's beliefs do not contradict the evidence offered to show that, at the time of the incident, Siem intended to shoot plaintiff.  Defendants also point to the self-serving statements of Siem that he did not intend to shoot

plaintiff.  Such evidence does not warrant summary judgment in this case because whether Siem seized plaintiff "through means intentionally applied" is primarily a question of objective intent, for which plaintiff has provided sufficient evidence.  See Brower, 489 U.S. at 598 (inquiry into subjective intent is not "practicable"); In re City of Philadelphia Litig., 158 F.3d 711, 722 (3d Cir. 1998) (affirming prior panel's focus on objective intent rather than subjective intent); Keller v. Frink, 745 F. Supp. 1428, 1432 (S.D. Ind. 1990) (officer's statement of subjective intent is irrelevant to seizure inquiry).  Therefore, defendants' argument is rejected.[7]

Finally, defendants assert that plaintiff inappropriately "presents speculative theories and hindsight analysis" regarding Siem's intent.  (Defs.' Reply Supp. Summ. J. at 10.)  It is true that when determining whether the use of deadly force was reasonable, "[a]n 'officer's actions are not to be assessed with 20/20 hindsight' when he was faced with the need to make instantaneous decisions."  Nelson v. County of Wright, 162 F.3d 986, 991 (8th Cir. 1998).  However, the issue before the court is not whether the use of deadly force was reasonable, but rather

---

[7]  Defendants also cite testimony by Officer Remling to show that Siem did not intend to shoot plaintiff.  The court finds such testimony irrelevant because it relates only to Remling's beliefs as to the amount of force necessary to restrain plaintiff.

whether Siem intended to seize plaintiff with deadly force. Plaintiff's offer of proof is entirely appropriate for this purpose.   Therefore, defendants' argument is without merit.

Having found that material issues of fact preclude summary judgment on whether Siem seized plaintiff by deadly force, the court must determine whether such a seizure would nonetheless be objectively reasonable and would not violate plaintiff's clearly established rights.   However, defendants do not argue that Siem reasonably believed he could lawfully seize plaintiff with deadly force.   They also do not argue that an intentional use of deadly force would not have violated plaintiff's clearly established constitutional rights.   For these reasons, defendant Siem is not entitled to summary judgment on the grounds of qualified immunity.

## III. Municipal Liability

Defendant City of Rochester seeks summary judgment with respect to its liability under section 1983.  A municipality may be held liable in a section 1983 action only when an unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978).  The policy must be the "moving force [behind] the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting Monell, 436 U.S. at 694).

Plaintiff argues that the City is liable for failing to adequately train its officers on the differences between the Glock and Taser. A municipality's failure to train police officers is actionable only when the failure rises to the level of "deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). When liability is based upon a single violation of federal rights, the plaintiff must show that the municipality failed to train its officers "to handle recurring situations presenting an obvious potential for such a violation." Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 409 (1997).

Plaintiff's claim against the City is based upon the single incident with defendant Siem. To support his claim, plaintiff points only to an expert's testimony that the need to train officers "is so obvious" that the City's failure to adequately train officials "can only be seen as deliberate indifference." (Pl.'s Mem. Opp'n Summ. J. at 31.) Plaintiff's expert emphasizes that the City failed to train officers to carry the Taser on the weak side of their body. However, plaintiff must show that the training deficiency was "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at 390. Plaintiff has failed to make such a showing or to offer any evidence of recurring

situations that alerted or should have alerted the City to any obvious need to further train its officers. Therefore, summary judgment in favor of the City is appropriate.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Accordingly, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. No. 13] is granted as to Counts II, III, IV and V of the complaint and denied as to Count I.

Dated: August 31, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court